## Jonathan H. Ellicott and Benj. H. Ellicott, *vs.* Martin, Love & Co.

In action by the endorsee against the acceptor of an accommodation draft, possession is *prima facie* evidence of consideration and title, and the fact that it was an *accommodation acceptance* does not throw the *onus* upon the plaintiff to prove that he paid value for it; such *onus* is on the defendant.

But where the defence relied on is fraud or illegality in the inception of the draft, then the *onus* is upon the plaintiff to prove affirmatively that he paid value for it.

The fact that the drawer did not place the acceptor in funds or goods to meet the draft at its maturity, as he had promised to do, is not evidence of fraud in its inception.

Where the party suing is in possession of the bill, the court will never inquire whether he sues for himself or as trustee for another, nor into the right of possession, unless on an allegation of *mala fides*.

The *prima facie* case made in favor of the plaintiff by his possession of the draft, cannot, in the absence of *mala fides*, be rebutted by evidence that the title to the draft was in some other party.

Each distinct exception which embraces an independent proposition of law, must be signed and sealed by the court below, before it can be regarded as a valid exception to be considered by this court.

Where, in the course of a trial, the court makes several rulings, which are successively excepted to but not signed and sealed, the fact that the last is so signed and sealed does not make the whole one continuous exception, but each separate exception must be signed and sealed.

But where a series of consecutive prayers are presented, and the court grants, rejects or modifies them, this is but one act, and one exception properly taken and executed will embrace the whole.

Appeal from the Superior Court of Baltimore city.

*Assumpsit,* by the appellees against the appellants, as acceptors of a draft, drawn by Edwin Farrar, of Richmond, Va., on them for $750, payable to the order of T. & R. Crouch, by whom it was endorsed. Plea, *non assumpsit.*

*Exception.* The plaintiffs offered in evidence the draft and protest, which stated, the defendants in reply to demand of payment said: "No funds placed in hands of drawer, as promised." They then proved, that after the draft was placed in the hands of their counsel for collection, one of the defendants called on said counsel and asked to see the draft, which

was shown to him, and on looking at it he said it was all right, and that they (the defendants,) would pay it to the plaintiffs, and indeed had already promised the plaintiffs so to do, but that as it was an accommodation acceptance and as the drawers had not forwarded funds or goods, as they had engaged to do, to meet it, the defendants would have to take as much time thereon as the law would allow, and would therefore stand suit to obtain such time; that defendants were pressed for money and time was an object to them.

The defendants then proved by Joseph C. Grant, (whose testimony was taken subject to exception,) that he was acquainted with the firm of Davenport & Co., of Richmond, Va.; that one of said firm had been in Baltimore, and informed witness that the Ellicotts had not paid their draft and he had sued them, but did not say what draft he referred to. That on his way to court to testify in this cause, witness called at the counting house of the plaintiffs, where he saw Martin, one of the plaintiffs, and asked him what the suit was about, to which Martin replied, that he knew nothing about it, that it was not his, and that it belonged to Davenport & Co. They then further proved, that they had given notice in writing to the plaintiffs to prove the consideration of the draft at the trial; and also, that the plaintiffs' endorsement, written on said draft, had been erased by their counsel at the trial table after the swearing of the jury, (said erasure took place while the *first* prayer was under discussion,) and the testimony was here closed.

The defendants then offered the following prayer: 1st. "If the jury believe the witness, Grant, then the plaintiffs are not entitled to recover." The plaintiffs still maintaining their objection to Grant's testimony, the prayer was discussed, and rejected by the court; "to which rejection the defendants excepted."

The defendants then asked leave to offer another prayer, to the effect, that notice having been given to the plaintiffs to prove consideration, the *onus* of such proof was upon them. The plaintiffs assented to this, and the court then adjourned to give the defendants' counsel time to offer his prayer and prepare his bill of exceptions. When the court met on the fol-

lowing morning, the defendants' counsel appeared and informed the court that they had withdrawn the prayer which the court had rejected, and waived their exception thereto, and then offered the following prayers:

2nd. If the jury find from the evidence that no value was ever paid to the defendants in consideration of their acceptance of said draft, and that notice was given to the plaintiffs to prove the consideration given by them therefor, then, in the absence of any such proof, the plaintiffs are not entitled to recover.

3rd. If the jury find the plaintiffs have no beneficial interest in this case, or the draft upon which it is brought, but are the mere agents of Davenport & Co. in assuming the character of plaintiffs therein, and that the plaintiffs' endorsement has been by them erased from the draft, then the plaintiffs have no legal interest therein and cannot sustain this action.

The plaintiffs then objected to the reception of the *third* prayer as being an alteration of the *first,* which the court had rejected, a re-opening of the case on a point already concluded and not within the reservation of the day previous, and in violation of the 36th and 37th rules of court, (which are set out in the record.) The *first* of these rules provides, in substance, that after the testimony on both sides is closed, all the prayers of both parties must be offered and discussed together, and the court, upon the whole case, will give such instructions as may appear requisite to place the case fully before the jury. The *second* provides, that after the jury shall have been so charged, no additional prayer will be received, nor additional evidence given, unless by permission of the court.

The court then entertained and rejected the *second* prayer, and refused to receive the third; "to which rejection and refusal the defendants excepted."

The defendants then offered a *fourth* prayer, as follows:

4th. If the jury find that the plaintiffs were not the owners of the draft sued on at the time of the institution of the suit, and that they acted therein at the request of Davenport & Co., to whom the said draft belonged, and for their use and benefit, and as their agents in bringing this suit, then the plaintiffs are not entitled to recover.

The court, (FRICK, J.,) refused to receive this prayer, also, as in violation of its rules above mentioned; "to which refusal to receive the defendants also excepted and asked the court to sign and seal this their first bill of exceptions, which is done," &c. The verdict and judgment being in favor of the plaintiffs, the defendants appealed.

The cause was argued before Le GRAND, C. J., ECCLE-STON and MASON, J.

*Grafton L. Dulany* for the appellants, argued:

1st. That the court below should have entertained the defendants' *third* prayer and decided upon its merits, because it contained substantially the same proposition of law as the *first*, which was withdrawn in order to introduce a fact, to wit: the erasure of the plaintiffs' endorsement, which was done after the first prayer was offered to the court. This fact was new proof by the plaintiffs, and hence a case for the application of the rules of the court below did not occur, and the court therefore erred in refusing to receive the defendants' *fourth* prayer. But again, the refusal of the court to receive each of these prayers, or give any opinion thereon, was *against law* and the right of the litigant, and could not be justified *by any rule of court.* 6 *H. & J.,* 415, *Allegree vs. Md. Ins. Co. Coke Litt.,* 227, *(b.) Fearne on Contingent Remainders,* 535, *note.* 1 *H. & G.,* 324, *Union Bank vs. Ridgely.* 1 *H. & J.,* 206, *Somervell vs. King. Ibid.,* 752, *Williams vs. Williams.* The ruling of the court below goes to the extent of saying, that no amendment of a prayer can take place after it is once submitted, and this entirely sets aside the act of 1809, ch. 153, relating to amendments.

2nd. The draft sued on was an *accommodation* draft, and the plaintiffs before suit brought were informed of this fact, and notice was given to them that they would be required to prove its consideration, and the question then arises, were they bound to prove that they *paid value* for it? We say such *onus* of proof was upon them. There is no difference between

a contract evidenced by a bill of exchange and any other: a *consideration* is essential to its validity.  *Story on Bills, secs.* 179, 180, 193.  3 *Eng. C. L. Rep.*, 377, *Green vs. Deakin.* 22 *Do.*, 79, *Heath vs. Sansom.  Ibid.*, 301, *Mann vs. Lent.* The proof of Grant shows that the plaintiffs had no beneficial interest or title in the draft, and that they were the mere *agents* of Davenport & Co., who were the substantial owners of it.  The question then is, does the *mere possession* of the draft give the plaintiffs the right to sue upon it?  We say this is not enough in such a case as this.  The plaintiff must have either a *beneficial* or a *technical legal* interest to entitle him to sue.  A mere *agent* cannot sue.  *Possession alone* is nothing: it is because it carries with it the *title* that gives it efficacy.  But possession and title are *separable*.  If the holder of a draft comes into court under circumstances of suspicion, the *title* is at once separated from the possession and he cannot recover.  1 *Gill*, 145, *Whiteford vs. Burckmyer & Adams*, and the same case in 6 *Gill*, 16, and 9 *Gill*, 500.  The plaintiffs here show that they had no title to the draft, no interest in it, and nothing to do with it.  This presents a case of *mala fides*, for it shows a total divestiture of any title or interest in the draft.

*T. K. Howard* and *S. T. Wallis* for the appellees, argued :

1st.  Independently of the question of want of consideration passing to the defendants for their acceptance, it is matter of no importance whether the plaintiffs were owners of the draft or only sued as agents of the owners, their *simple possession entitling them to sue and recover in the absence of mala fides alleged and proven.  Story on Promissory Notes, secs.* 246, 381.  1 *Gill*, 127, 145, 146, *Whiteford vs. Burckmyer & Adams*, and the same case in 6 *Gill*, 16, and 9 *Gill*, 500. 3 *Gill*, 251, *Chesley vs. Taylor.*  7 *Do.*, 216, 232, *Bell vs. Hagerstown Bank.*  8 *Do.*, 59, *Merrick vs. Bank of Metropolis.*

2nd.  Even if the *second* prayer of the defendants properly raised the question of want of consideration, (which we deny,) it still should have been rejected, because the mere

proof that the acceptance was an accommodation acceptance, as between drawer and acceptors, and the notice given did not throw on the plaintiffs the *onus* of proving that they were holders for value, no fraud or *mala fides* being alleged or proven. The former practice of requiring the plaintiffs to prove consideration in such a case as this, sustained by some authorities, is overruled by the modern cases. 1 *Mees. & Welsby*, 425, *Mills vs. Barber.* 41 *Eng. C. L. Rep.*, 645, *Arbouin vs. Anderson. Chitty on Bills,* (10 *Amer. Ed.,)* 650. *Byles on Bills,* 122. 4 *Watts & Seargeant,* 445, *Knight vs. Pugh.* 2 *Greenlf. on Ev., sec.* 172. 16 *Pet.,* 15, *Swift vs. Tyson.* 2 *Md. Rep.,* 356, *Renwick vs. Williams.* 5 *Do.,* 400, *Yates vs. Donaldson.* 9 *Mees. & Welsby,* 307, *Smith vs. Martin.*

3rd. The defendants by admitting their responsibility on the draft, as proven, promising to pay it, causing the plaintiffs to sue therefor, and professing to have no object but to gain time, estopped themselves from raising the questions presented in all their prayers. 1 *Greenlf. on Ev.,* secs. 207, 208.

4th. The court under its rules properly refused to entertain the defendants' *third* and *fourth* prayers. 2 *H. & G.,* 79, 82, *Wall vs. Wall.* 11 *G. & J.,* 92, 97, *Dunbar vs. Conway.* But even if the court erred in this, it is no ground for reversal, because if they had been received they must have been rejected, as we have already shown.

5th. But we say that the only *exception* in this case, is to the refusal to receive the *fourth* and last prayer. The mere noting of the other exceptions without the seal and signature of the judge, does not constitute them *exceptions* of which this court can take notice. Each exception must be signed and sealed. 9 *Pet.* 442, *Scott vs. Lloyd.*

MASON, J., delivered the opinion of this court.

Whether the action of the court below, in regard to its refusal to receive the defendants' prayers, was in conformity with its rules upon the subject, and whether those rules were

passed in the due and proper exercise of the legal functions of the court, are questions we need not decide on this appeal.

If all the defendants' prayers had been duly submitted and considered by the court, they should not have been granted, upon the case as made by the proof.

This is an action against the acceptors of a bill of exchange, accepted for the accommodation of the drawer, and which by endorsement has passed into the hands of the plaintiffs. The plaintiffs now maintain, that the possession of the draft is *prima facie* evidence of consideration and title, while the defendants insist, that they having given notice to the plaintiffs to prove the consideration of the draft in question, the *onus* has thereby been thrown upon them to show affirmatively that they did give value for it.

As a general proposition it may be true, that where a plaintiff has not given value for a bill of exchange, for which no consideration had been previously obtained, he cannot recover upon it. But the question is, upon whom is the *onus* of proving the want of consideration in such a case thrown? The answer to this question has been given in a number of cases. In the case of *Arbouin vs. Anderson,* 1 *Adol. & Ellis,* 503, (41 *Eng. C. L. Rep.,* 645,) Lord Denman says, "We must hold that the owner of a bill is entitled to recover upon it, if he has come by it honestly; *that that fact is implied prima facie by possession.*" And in the case of *Mills vs. Barber,* 1 *Mees. & Welsby,* 425, the court say: "If a man comes into court without any suspicion of fraud, but only as the holder of an accommodation bill, it may fairly be presumed that he is a holder for value:" and it is added, "in such cases the *onus probandi* is cast upon the defendant."

It is true, a contrary doctrine was at one time held, but the cases upon which it rested have been overruled. We may safely say, that the law is now well settled, that evidence of want of consideration as between the original parties to a note or bill, will not shift the burden of proof in an action by an endorsee, nor put him to show that he is a holder for value. Otherwise, however, when the defence relied on is

fraud or illegality in the inception of the paper, and not merely that it was given or accepted for the accommodation of the payee or drawer. *Knight vs. Pugh,* 4 *Watts & Sergeant,* 445. *Munroe vs. Cooper,* 5 *Pick.,* 412. 1 *Gill,* 145. *Renwick vs. Williams,* 2 *Md. Rep.,* 356.

The only ground for alleging fraud in the inception of the present bill was the circumstance, that the drawer had not placed the defendants in funds or goods to meet the draft upon its maturity, as he had promised to do. We presume that in every case of an accommodation acceptance the same pledge is made, and the fact that suit is afterwards brought, is presumption that the pledge was not kept; and if such a defence be good, it would follow, that an action could rarely ever be maintained against the acceptor or maker of an accommodation paper.

The evidence of the witness Grant, is insufficient to defeat the right of the plaintiffs to recover. The *prima facie* case which is made in favor of the plaintiffs by the possession of the draft, cannot be rebutted, under such circumstances, by evidence that the title to the draft was in some party other than the plaintiffs. In the case of *Whiteford vs. Burckmyer & Adams,* 1 *Gill,* 145, this court have said, that courts of justice will never inquire, where the party suing is in possession of the bill, whether the party sues for himself or as trustee for another, *nor into the right of possession,* unless on an allegation of *mala fides.* No *mala fides* having been alleged or proven in this case, the testimony of Grant becomes of no avail.

Although we have decided this case upon other grounds, yet we deem it proper to express an opinion upon another question raised by the record, which relates to the sufficiency of the exceptions—a question frequently presented, and of considerable importance in practice, but as yet not decided by this court.

It has been supposed by some, that where the court in the progress of the trial makes several rulings, which are successively excepted to, but which are not severally signed and

sealed, that notwithstanding, they should be considered and decided in the appellate court, provided the last ruling is signed and sealed ; in other words, that the whole should be considered as one continuous exception, sufficiently certified by the last signing and sealing. We cannot concur in this view of the law, but are of opinion that each distinct exception, which embraces an independent proposition of law, should be signed and sealed by the court below, before it can be regarded as a valid exception. This remark does not apply to a series of consecutive prayers offered by the counsel. In such a case the ruling of the court, in either granting, rejecting or modifying the prayers, may be regarded as a single act, and one exception, if properly taken and executed, may embrace the whole.

There are cases in the *Maryland Reports,* which might favor the idea, that a different practice has to some extent prevailed in this court. In all those cases we think it will be found, upon examination, that a strict compliance with the law was not insisted upon. We have been able to find no case where the practice has been expressly decided to be regular and proper, but on the contrary, wherever the question has been distinctly presented, this court has adhered to the strictness which we have herein pointed out as necessary. 2 *Har. & Johns.,* 345. 1 *Md. Rep.,* 13.

The same practice prevails in the Supreme Court of the United States, of requiring each exception to be signed and sealed by the court below. 9 *Peters,* 442, *Scott vs. Lloyd.* We refer to this case to illustrate, more particularly, our meaning in reference to the signing and sealing of the different exceptions.

*Judgment affirmed.*