# Ellis B. Long, and William W. Byrn, *vs.* Francis J. Crawford.

Where a general prayer, that upon the pleadings and evidence the plaintiff is not entitled to recover, is followed by particular specifications of the

points upon which the opinion of the court is asked, the prayer must be read distributively, as if it had been repeated before each of the specific grounds or objections stated.

A promissory note is negotiable, as well after its maturity and protest as before, and possession of such a note by the plaintiffs, at the institution of suit thereon against the endorser, is *prima facia* evidence of their right to sue for the same.

An endorser of a note after its maturity and protest, said he had received or seen the protest thereof, and would have it to pay, but would try to secure himself out of the property he had a bill of sale for, from the maker. He had taken a bill of sale of all the maker's property, except some book accounts of small value, to secure this and other notes. HELD:

That this was evidence legally sufficient to go to the jury, from which they might find that notice of protest was given to the endorser, or from which they might find a waiver of notice.

APPEAL from the Circuit court for Carroll County.

*Assumpsit,* brought July 16th 1856, by the appellants against the appellee, as endorser of a promissory note for $459.56, dated "Woodbine, Carroll County, Md., 30th September 1854," payable at twelve months "at the bank of Westminster," drawn by one Richard L. Ensey. Plea, *non assumpsit.*

*Exception:* The plaintiffs offered in evidence the note sued on, endorsed by the defendant, (his hand writing being proved,) and by Basil Owings & Son, and the protest thereof, which stated that, "written notices of protest" were sent to the endorsers, that to the defendant being put in the post office at Westminster, directed ' 'Woodbine, Carroll county, Maryland.'' The plaintiffs then proved by Ensey, the maker of the note, that it was delivered by him to James Owings & Co., (a firm composed of Basil Owings, and his son James Owings,) in part payment for store goods bought by him of that firm, and that defendant endorsed the same with full knowledge that it was to be used for that purpose, witness having bought out the store of that firm in Carroll county. The plaintiffs then offered in evidence a bill of sale, dated August 25th, 1855, from Ensey to the defendant and one Lydia Gosnell, conveying the stock of goods then in his store at Wood-

bine, with all additions that in course of dealing may be made thereto, and all his other personal property, to secure said Gosnell a debt of $400, due by him to her on account, and to secure her as security for him to the defendant in the sum of $445.45, and also to secure the defendant as security for him for $960, purchase money due James Owings & Co., for store goods bought by him the said Ensey. The plaintiffs further proved by said Ensey, that at the time he executed this bill of sale, he owned no other property than that therein mentioned, except book accounts of the cash value of $150, and that the property mentioned in said bill of sale, was taken from his possession by a writ of replevin issued the 18th of March 1856, at the suit of the defendant and the said Gosnell. On cross-examination this witness proved that defendant resides at Waterloo, in Carroll county, and his post office is Windfield, in that county, and that he sometimes received his letters at Franklinville, in that county, that Windfield is about one mile and Franklinville two miles, and Woodbine six or seven miles from his residence. The plaintiffs further proved that the *same parties* who did business at Woodbine in Carroll county in 1854, under the name of "James Owings & Co.," at the same time and afterwards did business in Baltimore, under the name of "Basil Owings, & Son," and that the two firms were identically the same in interest. The plaintiffs then proved by Basil Owings, one of the partners in these firms, that they sold their stock of goods at Woodbine to Ensey, and received from him the note in question, endorsed by the defendant in part payment therefor, and left the same at the bank of Westminster for collection with the name of "Basil Owings & Son," endorsed thereon; that after the note was due and sometime between the 12th and 25th of October 1855, witness met defendant at Ellicotts Mills, and had a conversation with him on the subject of this note, when defendant said he had received or had seen, (witness can not recollect which expression was used,) the protest on said note, that he would have it to pay but that he would try to secure

himself out of the property he had a bill of sale for from Ensey, that after the note was due and protested as aforesaid, witness, as one of the members of said firms, passed the same to the plaintiffs in payment of an account that he and his son, trading as aforesaid, then owed the plaintiffs, and delivered the same to the plaintiffs with the name of "Basil Owings & Son" endorsed thereon. Both parties having closed their case, the defendant asked the instructions to the jury set out in the opinion of this court. The court (NELSON, J.) granted the *third* prayer, and did not deem it necessary to decide upon the first and second prayers, as the third disposed of the case. To the granting of which third prayer the plaintiffs excepted, and the verdict and judgment being against them, appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Joseph M. Palmer* for the appellants.

The only question raised by the prayer, which was granted by the court below, is, whether the appellants had such an interest in this note, at the time of suit brought on it, as to enable them to sustain an action against the appellee as endorser. At the time the note was delivered to the appellants it was over-due, and protested for non-payment. The protest and notice fixed the liability of the appellee in favor of the then holders of the note, but it is well settled, that bills of exchange or promissory notes are negotiable, *ad infinitum,* until paid or discharged by the drawer or acceptor. *Byles on Bills,* 123 to 126. *Chitty on Bills,* 244. 4 *Gill,* 326, *Annan vs. Houck.* 4 *Bing.,* 390, *Hubbard vs. Jackson.* 3 *Maule & Selw.,* 95, *Callow vs. Lawrence.* A note is negotiable after protest as well as before. 5 *Munf.,* 388, *Ritchie, et al., vs. Moore.* 10 *Mees. & Wels.,* 698, *Whitehead vs. Walker.* This is not a debatable question in this State after the decision of *Annan vs. Houck.* At the time Basil Owings & Son delivered the note to the

appellants, no one can doubt but that they had a right of action against the appellee, as endorser, and having such right it was transferred to the appellants, by delivery of the note to them with blank endorsements upon it. 9 *Md. Rep.*, 462, *Kunkel vs. Spooner.* 6 *Gill*, 2, *Burckmyer & Adams, vs. Whiteford.* 6 *Md. Rep.*, 516, *Ellicott, vs. Martin, Love & Co.* The possession of the note was *prima facie* evidence of the right to sue, and the court will never inquire, where the party suing is in possession of the note, whether he sues for himself or as trustee for another, nor into the right of possession, unless on a charge of fraud. The case of *Burckmyer & Adams, vs. Whiteford,* is decisive of this question, for in that case the bill had been protested for non-acceptance, before it came into possession of *Burckmyer & Adams,* the parties suing upon it.

*Oliver Miller,* for the appellee.

Whether the prayer granted by the court below be right or not, if any of the propositions or prayers ought to have been granted, this court will decide the points so as to avoid controversy in the future prosecution of the suit, and it is insisted, therefore, that the first and second reasons, or prayers, not passed upon by the court below, should be considered by this court. 4 *H. & J.*, 527, *Chapman vs. Dixon.* If this be so, then it is insisted that no sufficient evidence of *notice* of protest was given to bind the appellee as endorser; the rule is universal, that notice sent by mail to charge an endorser must be sent to his *nearest* post office, which was not the case here. 3 *G. & J.*, 474, *Flack vs. Green.* 7 *Gill*, 223, *Bell vs. Hagerstown Bank.* 6 *H. & J.*, 172, *Bank of Columbia vs. Magruder.* Nor was there any sufficient evidence from which the jury could find a *waiver* of notice of protest. To constitute a *waiver*, where the promise of the endorser to pay is relied on, such promise must be made *with knowledge* that the holder has not used due diligence in giving the notice, that the notice was not legally sufficient, and that he was discharged by law from payment of the note. 1 *H. & J.*, 187, *Philips vs. McCurdy.* 4 *H. & J.*, 531, *Beck vs. Thompson. Story on Prom. Notes, secs.*

279, 280, 364 to 366. Knowledge on the part of the endorser of the dishonor of a bill or note, is not an equivalent for notice; there must be some communication from an authorised person to the endorser, stating to him the fact or facts by which his liability has become absolute. 1 *Amer. Lead. Cases*, 372. 11 *East*, 114, *Esdaile vs. Sowerby*. 5 *Mees. & Wels*, 418, *Burgh vs. Legge*. 9 *Sergt. & Rawle*, 198, *Gibbs vs. Cannon*. The bill of sale or indemnity deed was not sufficient evidence of a waiver of protest, for it does not convey *all* the maker's property, nor does it appear that the *security so taken* was *ample* security for the note. 9 *G. & J.*, 31, *Duvall vs. Farmers Bank*. 3 *Md. Rep.*, 265, *Lewis vs. Kramer & Rahn*. *Story on Prom. Notes*, secs. 281, 282.

GOLDSBOROUGH, J., delivered the opinion of this court.

This action was brought by the appellants against the appellee to recover on the promissory note mentioned in the record. Besides the count on the note, the plaintiff's declaration contained the *indebitatus* and common money counts.

The defendant pleaded *non assumpsit*. At the trial, the plaintiffs offered the evidence stated, *ante* 221, 222.

The defendant then asked the court to instruct the jury, that upon the pleadings and all the evidence in the cause, the plaintiffs are not entitled to recover in this action.

"1st. Because no sufficient evidence has been offered to the jury, from which the jury can find that notice of protest was given to the defendant according to law, so as to bind him for the payment of said note in the declaration mentioned and offered in evidence."

2nd. "Because no sufficient evidence has been offered to the jury from which the jury can find that the defendant waived notice of protest."

3rd. "Because, upon the evidence offered by the plaintiffs, and upon all the evidence in the cause, the plaintiffs were not the holders of the said promissory note at the time the same be-

29     v.18

came due, and was protested for non-payment, and therefore have no right of action against the defendant, as *endorser*."

The court granted the third prayer of the defendant, and did not deem it necessary to decide upon the first and second prayers, inasmuch as the third prayer disposed of the case.

To the granting of the third prayer by the court, the plaintiffs excepted.

The structure of the prayer in this case is similar to that in the case of *Yingling vs. Kohlhass,* decided by this court at the present term, *(ante* 148.) In that the court say, "this general prayer is followed by particular specifications of the points upon which the opinion of the court is asked, and the prayer must be read distributively, as if it had been repeated before each of the specific grounds or objections stated."

The prayer granted by the Circuit court presents two points for our consideration: 1st, was the note in question negotiable after its maturity? and 2nd, was the possession of the note by the plaintiffs, at the institution of the suit, *prima facie* evidence of their right to sue for the same?

We entertain no doubt that both of these points are with the plaintiffs, and they are affirmatively sustained by numerous authorities. See 4 *Gill,* 326, *Chitty on Bills,* 243, and *note,* and 3 *Maule. & Selw.,* 95, as to first point; and as to the second, see 1 *Gill,* 146, 6 *Gill,* 2, 6 *Md. Rep.,* 516, 9 *Md. Rep.,* 462. Being therefore of opinion that the Circuit court erroneously granted the defendant's third prayer, the judgment must be reversed and a *procedendo* ordered. Though the Circuit court did not deem it necessary to decide upon the first and second prayers, yet as they were fully argued before us, and either or both of them may arise in the further progress of this cause, we deem it proper to prevent future litigation, to express our opinion upon them.

Had the defendant insisted upon an expression of opinion from the court on these prayers, they should have been rejected, because, in the first place, we think there was evidence offered by the plaintiffs legally sufficient to go to the jury, from

which they might have found that notice of protest was given to the defendant, and, therefore, there was no necessity to prove a waiver of notice, or, in the second place, if the plaintiffs failed to offer sufficient evidence of notice of protest, still there was evidence offered by the plaintiffs from which the jury might find a waiver of notice.

> Judgment reversed, and
> procedendo awarded.

(Decided February 11th, 1862.)